IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JANIE DOE,** *by her next friends and parents,*
*JILL DOE and JOHN DOE,*

      **Plaintiff,**

v.                                          Civil Action No. 3:24cv493

**HANOVER COUNTY SCHOOL BOARD,**
*et al.*,

      **Defendants.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendants Robert J. May, in his official capacity as Chair of the Hanover County School Board, and Lisa Pennycuff's [1], in her official capacity as Interim Superintendent of the Hanover County School Board, (collectively, the "Defendants") Motion to Dismiss (the "Motion"). (ECF No. 64.) [2] Plaintiff Janie Doe responded in opposition to the Motion, (ECF No. 67), and Defendants replied, (ECF No. 69).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

---

[1] Michael B. Gill served as the Superintendent of Hanover County Public Schools from December 2015 until August 1, 2024, and was initially named as a Defendant in this suit. (ECF No. 52 ¶ 10; *see* ECF No. 1, at 1.) Effective August 5, 2024, Lisa Pennycuff serves as the Interim Superintendent of Hanover County Public Schools. (ECF No. 52 ¶ 10.) Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she has been substituted for Superintendent Michael B. Gill as a Defendant in this action. (ECF No. 61, 1 n.2.)

[2] The Court employs the pagination assigned by the CM/ECF docketing system.

For the reasons articulated below, the Court will grant Defendants' Motion to Dismiss. (ECF No. 64).

## I. Factual and Procedural Background

### A.  Factual Background[3]

#### 1. Janie's Gender Identity, Gender Dysphoria Treatment, and Transition[4]

Janie Doe is an eleven-year-old "transgender girl, which means she is a girl who was assigned the sex of male at birth." (ECF No. 1 ¶ 2.) "Janie has known from a very young age that she is a girl." (ECF No. 1 ¶ 51.) By August 2020, when Janie was "seven years old, [she] expressed a definitive preference for she/her pronouns and requested to start the third grade wearing only girls' clothes." (ECF No. 1, ¶ 51.) In 2021, when Janie was seven or eight years old, she changed her legal name, and "was issued a birth certificate by the Virginia Department of Health reflecting her sex as female." (ECF No. 1 ¶ 53.) "Janie attends a middle school within Hanover County Public Schools." (ECF No. 1 ¶ 11.)

"In August 2021, following a year-long evaluation, a clinical psychologist formally diagnosed Janie with gender dysphoria and advised that puberty blockers would be indicated

---

[3] In considering the Motion to Dismiss, (ECF No. 64), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Janie Doe. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

[4] For a definition of terms such as gender identity, gender dysphoria, cisgender, etc., the Court refers to the meticulously researched and written opinion in *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594–97 (4th Cir. 2020).

"Gender identity" means one's "deeply felt, inherent sense" of one's gender. *Id.* at 594.

"Cisgender" describes a person whose gender identity "aligns with their sex-assigned-at-birth." *Grimm*, 972 F.3d at 594.

when she reached the appropriate stage of puberty." (ECF No. 1 ¶ 54.) In May 2022, "Janie's endocrinologist confirmed this diagnosis[.]" (ECF No. 1 ¶ 54.) Since the fall of 2020, when Janie was seven, she "attended school as a girl and used a first name . . . that aligns with her gender identity." (ECF No. 1 ¶ 52.) In September 2022, when Janie was nine years old, she received a histrelin implant. (ECF No. 1 ¶ 55.) This implant "suppresses [her] endogenous hormones and prevents further development of puberty associated with testosterone." (ECF No. 1 ¶ 55.)

### 2. Janie's Love of Tennis and the School Board's 2023 Decision to Exclude Janie From Her Middle School's Girls' Tennis Team

Janie loves to play tennis and "was excited to try out for the girls' tennis team alongside her best friend at the beginning of the 2023-2024 school year." (ECF No. 1 ¶ 57.) The only way for Janie to play tennis for her school is for her to play on the girls' team because anything else "would undermine [her] gender-affirming treatment and exacerbate her gender dysphoria." (ECF No. 1 ¶ 88.) "On or about August 29 and August 31, 2023, Janie tried out for the girls' tennis team" at her middle school and on August 31, 2023, found out that she was selected to join the team. (ECF No. 1 ¶¶ at 58–59.)

But, on September 5, 2023, her parents received a letter from Defendant Mr. May explaining that the School Board had learned that Janie "was born male" and requesting "medical documentation or verification" of Janie's "consistent expression as a female." (ECF No. 1-2 (hereinafter the "September 5, 2023 Letter"), at 1).) The letter stated that the request came "[i]n light of the recently released *Virginia Department of Education's Model Policies on Ensuring Privacy, Dignity and Respect for all Students and Parents in Virginia's Public Schools*, the Attorney General's opinion issued August 23, 2023 on this issue, and [the School Board's] current practice for middle school transgender athletes." (September 5, 2023 Letter, at 1.) Mr.

3

May advised that Janie would "not be permitted to participate in practices or matches" until the School Board reached a decision. (September 5, 2023 Letter, at 1.)

On September 11 and 12, 2023, Janie's parents, Jill and John Doe, submitted documentation to the School Board evincing Janie's gender dysphoria diagnosis and treatment. (ECF No. 1 ¶¶ 67–68.) On September 14, 2023, Jill and John Doe received a four-sentence letter from Mr. May informing them that "the School Board voted unanimously against permitting [Janie] to participate on the middle school girls' tennis team in effort to ensure fairness in competition for all participants." (ECF No. 1-3 (hereinafter the "September 14, 2023 Letter"), at 1).)

Janie was "angry" and "embarrassed" by the decision. (ECF No. 1 ¶ 71.) She was particularly upset that she "was not able to play on the [2023] girls' tennis team with her friends and classmates or proudly wear the team's uniform together with them at school." (ECF No. 1 ¶ 71.)

Janie subsequently sought other opportunities outside of Hanover County Public Schools to participate in athletics. (ECF No. 1 ¶ 73.) Specifically, in the spring of 2024, Janie participated in "a private competitive tennis program . . . where [she] was able to participate in accordance with her gender identity. (ECF No. 1 ¶ 73.) This program entailed "greater expense and logistical burden than was required for participation on the school team." (ECF No. 1 ¶ 73.)

### 3. The Virginia Department of Education Model Policies and the School Board's Updated Policy Regarding Participation in Extracurricular Activities

On November 14, 2023, the School Board unanimously voted to revise its policy governing extracurricular activities. (ECF No. 1 ¶ 74.) The School Board added the following paragraph to its extracurricular activities policy:

4

> For any school programs, events, or activities (including extracurricular activities) that are separated by biological sex, the appropriate participation of students will be determined by biological sex rather than gender or gender identity. . . . Reasonable modifications to this policy will be permitted only to the extent required by law.

(ECF No. 1 ¶ 74; ECF No. 1-5, at 1) (hereinafter, the "Policy").) According to the School Board, the Policy was "the result of the model policies recently issued by the Virginia Department of Education entitled Model Policies on Ensuring Privacy, Dignity, and Respect for All Students and Parents in Virginia[']s Public Schools." (ECF No. 1 ¶ 78.)

### 4. The 2024 Tennis Tryout

Janie "still desires to represent her school and play tennis with her friends." (ECF No. 1 ¶ 83.) In the fall of 2024, Janie's parents asked the School Board whether "Janie would be allowed to participate on the girls' tennis team[.]" (ECF No. 1 ¶ 84.) On June 12, 2024, "the School Board informed Janie's parents that it would consider a renewed request for Janie to participate on the girls' tennis team in the upcoming season" and "directed Janie's parents to submit a formal request with supporting documentation for its consideration in a closed session at an upcoming meeting." (ECF No. 1 ¶ 85.) On June 21, 2024, Janie's parents submitted a letter to the School Board renewing their request that Janie be allowed to participate on the girls' tennis team in the fall of 2024. (ECF No. 1 ¶ 86.) Along with the letter, their submission included: (1) a June 20, 2024 letter from Janie's physician stating that Janie was under continuing care and met the diagnostic criteria for gender dysphoria; (2) a copy of the United States Court of Appeals for the Fourth Circuit's April 16, 2024 decision in *B.P.J. v. W. Va. State Bd. of Educ.*, 98 F.4th 542 (4th Cir. 2024), *petition for cert. filed*, Nos. 24-43, 24-44 (July 16, 2024); and, (3) a reference to the documents previously submitted in September 2023. (ECF No.

5

1 ¶ 86.) The Does expected the School Board to consider Janie's renewed request at its July 9, 2024 meeting. (ECF No. 1 ¶ 87.)

### B. Procedural Background[5]

On July 3, 2024, Janie Doe filed a two-count Complaint alleging deprivation of equal protection, in violation of the Equal Protection Clause of the Fourteenth Amendment, and violation of Title IX, 20 U.S.C. § 1681, *et seq.* (ECF No. 1 ¶¶ 92–107.)

On August 29, 2024, Defendants filed the instant Motion to Dismiss. (ECF No. 64.) On September 12, 2024, Plaintiff responded, (ECF No. 67), and on September 18, 2024, Defendants replied, (ECF No. 69). The matter is ripe for disposition.

### II. Legal Standard: Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate

---

[5] The Court acknowledges that tryouts for the 2024 girls' tennis team apparently occurred in August 2024 after it issued its August 16, 2024 decision, (ECF No. 62). The decision on the instant Motion to Dismiss, (ECF No. 64), is based on the Complaint only. In any event, based on this Court's decision to grant the Motion to Dismiss as duplicative, those subsequent events are of no moment.

6

some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." *Giacomelli*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty, Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (concluding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

### III. Analysis

Plaintiff brings her equal protection and Title IX claims against both (1) Hanover County School Board and (2) Chair of the School Board, Robert J. May, and Interim Superintendent of Hanover County Public Schools, Lisa Pennycuff,[6] in their official capacities. (ECF No. 1, ¶¶ 93, 101.) In contrast to personal-capacity suits, which "seek to impose personal liability upon a

---

[6] Plaintiff originally brought her complaint against Michael B. Gill, who served as the Superintendent of Hanover Country Public Schools from December 2015 until August 1, 2024. (ECF No. 52 ¶ 10.) Lisa Pennycuff was named the Interim Superintendent of Hanover County Public Schools, effective August 5, 2024, and was substituted into this matter. (ECF No. 52 ¶ 10.)

government official for actions he [or she] takes under color of state law", "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). "Suing an individual in his [or her] official capacity . . . is essentially the same as suing the entity for which he [or she] works." *Motley v. Virginia*, No. 3:16cv595 (MHL), 2017 WL 1135613, at *4 (E.D. Va. Mar. 24, 2017) (quoting *Wyatt v. Steidel*, No. 3:14cv64, 2014 WL 3945864, at *1 (E.D. Va. Aug. 12, 2014) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991))). "Therefore, if a plaintiff files suit against both a governmental entity and against that entity's officials in their official capacities, the suits against the government officials are duplicative, and may be dismissed as such." *Steinburg v. Chesterfield Cnty. Planning Com'n*, No. 3:06cv248 (REP), 2007 WL 404853, at *4 (E.D. Va. Feb. 1, 2007) (citations omitted).

In some cases, courts have exercised their discretion to allow duplicative claims against an official in his or her official capacity and a government entity to proceed. *See, e.g., Chase v. City of Portsmouth*, 428 F.Supp.2d 487, 489–90 (E.D. Va. 2006); *Duncan v. Prince George's Cnty.*, No. 8:18-cv-01378, 2018 WL 6621503, at *3 (D. Md. Dec. 18, 2018). In *Chase*, the court allowed claims against officials sued in their official capacities, though "redundant", to proceed, reasoning that "[i]n cases . . . where elected officials are alleged to have violated federal laws protecting a local constituency, public accountability is of utmost importance." 428 F.Supp.2d at 489–90. In *Duncan*, the court allowed claims against Prince George's County, Maryland and its Director of the Department of Corrections, whose involvement was "not inconsequential", to proceed when the complaint involved allegations that "Defendants, including [the Director],

have systematically deprived detainees of any meaningful grievance process to address officer misconduct." 2018 WL 6621503, at *2–3.

In contrast, the alleged constitutional and statutory violations at bar set forth in Janie Doe's Complaint principally result from the Hanover County School Board's unanimous decision in 2023 to prohibit Janie from participating on the middle school girls' tennis team and enactment of a policy "to categorically bar transgender students . . . from participating on school sports teams consistent with their gender identity." (ECF No. 1 ¶¶ 3, 4, 70, 74.) Unlike in *Chase*, neither Mr. May nor Ms. Pennycuff are officials elected by the public. (*See* ECF No. 1 ¶¶ 13–14; ECF No. 61 1 n.2.).) Thus, the public accountability rationale upon which the court relied in *Chase* is weakened here. This case is likewise distinguishable from *Duncan*. No allegation even suggests that Ms. Pennycuff (or her predecessor Mr. Gill)—who are not members of the School Board—participated in the School Board's decision to prohibit Janie from playing on the girls' tennis team. (*See* ECF No. 1 ¶¶ 14, 70.) And Mr. May is just one member of the multi-member School Board, which acted as a body to deny Janie's request to try out for the team. (*See* ECF No. 1 ¶ 13, September 14, 2023 Letter, at 1.)

The claims against Defendants Mr. May and Ms. Pennycuff are "duplicative" of the claims against the Hanover County School Board. In light of this redundancy, the Court will grant the Motion to Dismiss and dismiss the claims as brought against Mr. May and Ms. Pennycuff. *See Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the . . . claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative."). The Court will dismiss Defendants Robert J. May and Lisa Pennycuff from this action.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss. (ECF No. 64.)

An appropriate Order shall issue.

Date: 10/8/24
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge